## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

GOLDSTONE FINANCIAL GROUP, LLC AND
ANTHONY PELLEGRINO,

Plaintiffs,

v.                                              **COMPLAINT**

FINANCESCAM.COM,

Defendant.                          **JURY TRIAL DEMANDED**

---

Plaintiffs Goldstone Financial Group and its founder and CEO, Anthony Pellegrino (together, "Plaintiffs"), bring this Complaint against FinanceScam.com ("FinanceScam" or "Defendant"), a Ukraine-based company actively engaged in a targeted false and defamatory campaign against Plaintiffs, as well as other financial industry professionals. Under the guise of journalism, FinanceScam floods the internet with Artificial Intelligence (AI)-generated defamatory content incorporating Plaintiffs' federally registered trademarks, which it then charges its victims to remove.

In support of its Complaint, Plaintiffs allege as follows:

### <u>NATURE OF ACTION</u>

1.      This is a civil action for trademark cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); for federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and for defamation per se, false light, and trade libel (commercial disparagement) under Illinois state law.

2.      Plaintiffs seek both injunctive and monetary relief in connection with these claims.

## THE PARTIES, JURISDICTION, & VENUE

3.      Goldstone Financial Group ("Goldstone") is a professional limited liability company organized and existing under the laws of Illinois, with a principal place of business at 18W140 Butterfield Road, Oakbrook Terrace, IL 60181.

4.      Goldstone is a premier financial advisory firm.  Led by its founder and CEO Anthony Pellegrino ("Mr. Pellegrino"), Goldstone and its experienced team of professionals secure the financial future for thousands of retirees in Illinois and beyond.

5.      Defendant FinanceScam is an entity engaged in the creation and publication of online content targeting financial services businesses, including Goldstone and Mr. Pellegrino, which it then charges its targets to remove.  FinanceScam is directly or indirectly responsible for the conduct described in this Complaint.  According to its website, FinanceScam is "a Ukraine-based company" with an address at 3, Yordanska Street, Obolonskyi, Obolon, Kyiv – 04211, Ukraine.[1]

6.      FinanceScam operates a network of websites which it calls the "Critical Intel Network website(s)" (the "Network").[2]  Included within the Network are the websites www.intelligenceline.com and www.criticalintel.com--a domain which forwards to FinanceScam's main website.  FinanceScam has threatened to broaden the Network's scope, but a non-exclusive list of the Network websites is included as Exhibit A to this Complaint.

7.      One of the Network websites operated by FinanceScam is www.goldstonefinancialgroupreview.com.  This website includes the following banner, which

---

[1]  https://www.financescam.com/legal/ [privacy policy tab] and https://www.financescam.com/contact/

[2]  https://www.financescam.com/legal/ [content removal policy tab]

reflects a current tranche of websites operating within the Network dedicated to defaming and disparaging the Plaintiffs:



These websites mirror each other with substantively similar content. A full capture of one of the websites—https://anthonypellegrinogoldstonefinancial.com/—is attached as Exhibit B.

8.       FinanceScam also operates YouTube and, on information and belief, other social media channels, that share common names with the Network websites, including the YouTube channels "Goldstone Financial Group Review" and @AnthonyPellegrinoReview (collectively the "Channels").[3] All currently known Network Channels are included in Exhibit A. Like the Network websites, the Channels are dedicated to defaming and disparaging Goldstone and Mr. Pellegrino.

---

[3] https://www.youtube.com/watch?v=RDH4fqqxshQ;
https://www.youtube.com/@anthonypellegrinoreview

9.      On information and belief, FinanceScam also operates the website https://CyberCriminal.com ("CyberCriminal") as part of the Network, a website dedicated to "help[ing] good people scrub their reputations" operated by four "Senior Stuff Writter[s]" named Jason Baglay:[4]



10.     The relationship between FinanceScam and CyberCriminal is exemplified by their symbiotic relationship and reference to each others' content.  For example, an article posted to a Network website bearing a direct connection to FinanceScam on April 7, 2025, titled "Anthony Pellegrino: Uncovering business Ties, Legal Issues, and Reputational Risks" cites as a reference both Cybercriminal and Financescam.[5]  Further, both websites closely mirror each other in content and format, including a "wall of shame" section.  Finally, the YouTube channel

---

[4]  https://cybercriminal.com/about

[5]  https://www.goldstonefinancialgroupreview.com/anthony-pellegrino-review/128972572/review

@AnthonyPellegrinoReview directs viewers to the Network websites, while hosting

substantively similar videos branded with FinanceScam, IntelligenceLine, and CyberCriminal:



11.     Alternatively, on information and belief, at all relevant times CyberCriminal was the agent, servant, employee, partner, joint venturer, representative, subsidiary, affiliate, and/or alter ego of FinanceScam and was acting within the course and scope of said agency, service, employment, partnership, joint venture, representation, and/or affiliation.  Plaintiffs further allege that CyberCriminal ratified, approved, joined in, acquiesced, or authorized FinanceScam's wrongful acts and conduct described in this Complaint.

12.     This Court has subject matter jurisdiction over Plaintiffs' federal Lanham Act claims under 28 U.S.C. § 1331.

13.     This Court has supplemental jurisdiction over Plaintiffs' claims arising under Illinois law pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

14.     This Court has personal jurisdiction over the Defendant because it has reached into—and so has purposefully availed itself of the privilege of conducting activities within—Illinois.  It has done so in multiple ways.  First, Defendant directly targets potential Goldstone consumers—many of whom are based in Illinois—as exemplified by a Network article touting the author's "Expert Opinion" that "would strongly advise against any association with Anthony Pellegrino."[6]  Second, on information and belief, FinanceScam posts content and then permits paid removal by its targets (i.e., Plaintiffs), meaning that its actual target consumers are the Illinois resident Plaintiffs.  Third, the substantial effect of its targeted defamatory campaign is experienced by the Plaintiffs in Illinois.

---

[6] Anthony Pellegrino: Uncovering Business Ties, Legal Issues, and Reputational Risks - Anthony Pellegrino

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

### A.     FinanceScam's Extortionist Business Model

16.     FinanceScam purports to be a "team of journalists, investigators, and activists . . . committed to uncovering and examining financial scams and money laundering activities worldwide."[7]

17.     In fact, FinanceScam is an extortionist digital marketing firm.  It starts by identifying targets, and then uses AI tools to flood the internet with negative articles about the targets.

18.     By continuously generating new content about its targets, FinanceScam ensures that search engines optimize its torrent of false and misleading information.  This means its content is ranked highly in search engine returns for user searches on terms like "Goldstone Financial Group," "Anthony Pellegrino," and the like.

19.     Once FinanceScam has the attention of its targets, it charges them to remove this content.  It does this through its "Citizen Advocacy Program" which offers an "expeditious and enduring resolution, backed by a lifetime warranty, directly from the authoritative source" to "mitigate and purge the content from our website":

---

[7]  https://www.financescam.com/about/

## How does **Citizen Advocacy Program** work??

Our objective is to offer a solution that is both uncomplicated and direct, while safeguarding the integrity of our platform and addressing your reputational requirements. We aim to prevent reputation management agencies from enticing you into their fraudulent schemes, commonly referred to as "Suppression Campaigns". Our solution disrupts these deceptive practices and provides you with an expeditious and enduring resolution, backed by a lifetime warranty, directly from the authoritative source. Based on the information you provide, we can offer to mitigate and purge the content from our website, while you pursue this legally. In short, what we offer to do after we are provided with a court order declaring the content to be defamatory or illegal, we do it before you initiate the legal options.

20.     FinanceScam invites its targets to "Apply for the Program" with prominent disclaimers next to the defamatory content (and, in this case, the Plaintiffs' federally registered trademarks):[8]

---

[8] https://www.financescam.com/2025/04/30/anthony-pellegrinos-financial-deception-exposed/

### Parogan, Olympus Prime, and Asgard

Israeli online businesses now have strongholds in Belgrade and Limassol. Belgrade has a booming boiler room scene that is still…

### Ken Alston Operated in Regulatory Shadows Through Offshore Havens

Ken Alston operated from jurisdictions known for weak oversight, enabling him to evade accountability, obscure fund movements, and shield assets…



## The Deceptive Facade of Goldstone Financial Group

### Anthony Pellegrino's Financial Web: A Risk-Laden Operation Disguised as Retirement Planning

Goldstone Financial Group claims to offer financial stability for retirees—but the firm's track record paints a picture of reckless greed. Goldstone aggressively pushed clients into non-traded REITs and high-fee annuities, while reaping windfalls from unregistered securities such as those tied to the infamous 1 Global Capital scandal. Pellegrino and his brother Michael, Goldstone's co-founder, reportedly pocketed $1.6 million in commissions from 1 Global—an eye-popping 4.3% fee, dwarfing industry norms. This isn't strategic investing; it's profiteering at the expense of retirees.

Despite having SEC and insurance licenses, Goldstone's practices routinely skirt the edges of compliance, as evidenced by the 11 client disputes lodged between 2015 and 2019 alone. These complaints—centered on excessive fees, unsuitable investments, and breaches of fiduciary duty —reveal a culture of self-enrichment rather than financial stewardship. While Pellegrino claims legitimacy through his media appearances, what lies underneath is a network of opaque practices, ethically questionable partnerships, and aggressive marketing tactics aimed at vulnerable investors.

### The Man Behind the Mask: Anthony Pellegrino's Contradictory Persona



**Beware of Reputation Agencies**
claiming to suppress or remove content from this website

**Read our Warning**



**Repair your Reputation the correct way**

**Citizen Advocacy Program**



21.     Once a target enrolls and agrees to FinanceScam's fee proposal, FinanceScam

will then "purge content from Google Search and hide from all social media platforms, including

YouTube" (i.e., the Network):[9]

---

[9]  https://www.financescam.com/citizen-advocacy-program.  *See also*
https://www.intelligenceline.com/citizen-advocacy-program/.

# 4 Simple Steps - Processed within 72 Hours

At FinanceScam.com, we do not remove user-generated reports, and and the law supports our initiatives and non-removal policies. However, in case you can convince us that your claims are legit, and you intend to pursue this legally against the author(s), we have a soltuion so that you can protect your reputation WHILE you secure a court order declaring the content as illegal, just you like claimed in your application form.



**Apply for the Program**

Get in touch with us and explain your case. Submit the form with all relevant details.

While you pursue this matter legally against the author(s), we help you remove the content and preserve the evidence. This is intended to provide a major relief in advance to business who value their reputation and are confident of securing a favorable court decision.



**You Remit Payment**

If you approve our proposal to compensate us for the manpower involved and related agreements provided, you can remit the fee for the Citizen Advocacy Program and get enrolled.

Once you enrol into this program, we ensure that no new content is approved on our network, and the existing content is removed till the tile you secure and provide us the court order.



**Proposal is Sent**

If we are to accept your request, we will calculate and provide you the fee for the manpower, technical and adminsrtrive cost to process the removal, preserve the evidence, purge content from Google Search and hide from all social media platforms, including Youtube. There is no fee demanded to remove the actual content from platform.

Enrolling with our Citizen Advocacy Program fasttracks your request for author info, including user email, IP addresses and geo-location, without the mandatory requirement of a subpoena issued from a US Court.



**Content is Purged**

Once we secure the payment, our team will process the removal of the content, and preserve the evidence, while applying a firewall filter to deny any future content from being published against you, till the time you are able to pursue this matter legally and secure a court order in your favor.

Applying for the Citizen Advocacy program does not necessarily mean that you will be approved. We do not accept applications for content involving heinous crimes, sexual crimes or terrorism. We also do not accept applications from Pakistan, Nigeria, Sudan and China.

22.     FinanceScam explains that its "fee is mutually agreed, covering manpower, technical tasks, and compensation for lost traffic and search engine rankings due to content removal."[10]  Similarly, CyberCriminal invites targets "feel[ing] vulnerable" to enroll in its "Brand Protection" program in order to "scrub [your] reputations-and protect them from further damage."[11]

23.     FinanceScam and CyberCriminal actively channel targets into these payment programs—and away from alternatives—by warning against the "Bait-and-Switch tactics of Online Reputation Management Services" in a "REPUTATION MANAGEMENT SCAM ALERT."  It further asserts the only way to "actually Remove from FinanceScam.com" is via "court order, or cooperating with a member of our Citizen Advocacy Program."[12]

24.     To further vector targets into its removal programs, it warns that any other method to "remove any content from our website without our consent . . . can only be using one of these 4 methods - [1] By Hacking our Website [2] Using Fake DMCA Notice [3] Forging a Court Order [4] By Attempting to Bribe us":

---

[10]  *Id.*

[11]  https://cybercriminal.com/brand-protection

[12]  https://www.financescam.com/reputation-management-alert



25.     If a target enlists the aid of what FinanceScam styles a "rogue reputation firm[]" to remove defamatory content, FinanceScam warns that it will "take action to ensure the reinstated content gets maximum exposure . . . . It never ends well any anyone [sic] willing to comit [sic] a crime to remove from our websites."[13]

**B.     FinanceScam's Campaign Against Goldstone & Mr. Pellegrino**

---

[13]  https://www.financescam.com/reputation-management-alert

26.     On information and belief, FinanceScam's targeting of Plaintiffs began sometime in April 2025, when it published two contemporaneous articles about Plaintiffs.  The first was titled "Anthony Pellegrino: Uncovering Business Ties, Legal Issues, and Reputational Risks." The second was titled "Anthony Pellegrino Exposes: Uncovering Business Ties, Scandals, and Reputational Risks."

27.     On April 19,[14] FinanceScam published 13 additional, substantively similar articles about Plaintiffs with titles like "Goldstone Financial Group Exposed: Anthony Pellegrino's Fraudulent Activities" and "Goldstone Financial Group: Investment Fraud Linked to Anthony Pellegrino."  The substantive thrust of these articles is to trumpet and mischaracterize a three-year-old SEC administrative settlement by inaccurately stating that Mr. Pellegrino and/or Goldstone engaged in fraud, which is demonstrably false.

28.     For example, the title of the article "Anthony Pellegrino: The Disgraced Financial Advisory Behind Goldstone Financial Group's Fraudulent Scheme" at best misleadingly implies, and at worst directly (and falsely) states, that Goldstone committed fraud and Anthony Pellegrino was behind it.[15]  The article elaborates on these false and/or misleading statements with statements like "[f]ollowing the exposure of their fraudulent dealings" and "[f]or those affected by Goldstone's fraud," all while stating this resulted from an SEC "investigation."

29.     These articles grossly mischaracterize a SEC administrative settlement regarding a "1 Global Incident" using intentionally false, misleading, and hyperbolic statements about

---

[14]  While the articles contain "Published on" dates, those dates are facially inaccurate because they often reference events post-dating their "publication" date.  For example, an article purportedly "published on" 19 April, 2025 discusses events that purportedly occurred in May 2025.

[15]  *See, e,g.*, https://www.anthonypellegrino.net/anthony-pellegrino-the-disgraced-financial-advisor-behind-goldstone-financial-groups-fraudulent-scheme/

Plaintiffs' involvement, such as that it was "herding [advisory clients] into a slaughterhouse for secret profits" which "transformed Goldstone into a parasitic entity, feasting on the trust of those it was meant to protect" and that "[t]his sordid tale stains the entire financial advisory sector, revealing the festering underbelly of unchecked avarice."[16]

30.     On information and belief, in May of 2025 FinanceScam escalated its campaign against Plaintiffs by beginning to falsely assert that "Anthony Pellegrino and his Reputation Managers are blatantly committing serious crimes in trying to censor information on Google."[17] These accusations are false, disturbing, and are actively and irreparably damaging Goldstone's business and Mr. Pellegrino's reputation.

31.     FinanceScam's false criminal accusations against Plaintiffs fall into the "4 methods" it accuses "Reputation Management companies" of using to improperly remove content from the Network.

32.     ***"Forging a Court Order."***  First, FinanceScam falsely asserts that on "13th April, 17th April and 28th April" Mr. Pellegrino "and his reputation managers" "sent a Forged Court Order to our Hosting Company AlexHost), hoping to con them into thinking that a US Court has declared content published at FinanceScam.com and IntelligenceLine.com as Defamatory":

---

[16]  https://www.anthonypellegrino.net/anthony-pellegrino-the-fraudulent-mastermind-behind-goldstones-collapse/.

[17]  https://www.goldstonefinancialgroupreview.com/anthony-pellegrino-review/128942/review

# Here are the screenshots of the aforesaid forgery.

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI

GOLDSTONE FINANCIAL GROUP )

        Plaintiff, )  Case No. 12CY-CV14362
                 )  Division No: 1

vs. )

CRITICAL INTEL LTD )

        Defendants.

### JUDGEMENT AND PERMANENT INJUNCTION

NOW THEREFORE on this 24th day of March, 2025, comes on Plaintiff's Second Motion for Order to Show Cause and Plaintiff's Motion for Sanctions and Default Judgment.

### FINDINGS

The Court having read the pleadings, having heard the arguments of counsel, and otherwise being fully advised in the premises finds as follows:

A.  Plaintiff filed this action on December 17, 2024, asserting a claim for defamation arising out of false statements about Plaintiff posted by Defendants CRITICAL INTEL LTD on various websites including –

    1-  https:// financescam.com

    2-  https://intelligenceline.com

17

33.      ***"Using Fake DMCA Notice" and "Hacking our Website."***  Second, under the heading "Fake Copyright Takedown Notices by Anthony Pellegrino", FinanceScam falsely claims "Anthony Pellegrino paid hackers to hack [Network websites] and remove his negatiev [sic] content . . . . While most were removed after hacking, some remained.  To remove the remaining articles from Google Search, he asked the reputation agencies to file fraudulent copyright takedown notices."

34.      ***"By Attempting to Bribe us."***  Third, under the heading "Bribe Attempts from Anthony Pellegrino", FinanceScam posted the following conversation, which on information and belief is fabricated, but in any event was not authorized or done with Plaintiffs' knowledge:

At the same time when these people hired by Anthony Pellegrino were targeting us, they were also trying to bribe us –

April 21, 2025, 03:22 by matthewlopez4527@gmail.com:

Hello Stanimir,

I'm reaching out on behalf of my client Mr. Anthony Pellegrino regarding the links takedown from financescam and intelligenceline along with all Youtube videos. We'd like to explore the possibility of resolving this amicably and are open to discussing a potential monetary settlement to close mutually.

We will also retract all Youtube DMCAs against you.

Regards
Matt

This was our response –

## Re: Reaching Out For Possible Deal : Anthony Pellegrino

Dear Matt,

Thank you for reaching out on behalf of Mr. Anthony Pellegrino regarding the links takedown. We appreciate your interest in resolving this matter amicably.

However, after careful consideration, we must respectfully decline your offer for a monetary settlement. Our organization adheres to strict ethical guidelines, and we cannot accept any form of compensation that could be perceived as influencing our decisions improperly.

We encourage you to pursue any legitimate requests through the appropriate channels, and we will be happy to consider them in accordance with our policies and procedures.

Thank you for your understanding.

Best regards,

Editor - FinanceScam.com

Once we declined their offer, they filed multiple fake DMCAs against out Youtube channel, resulting in takedowns of several videos on Anthony Pelegrino –

35. Finally, in the same post, FinanceScam falsely accuses "Anthony Pellegrino and Goldstone Financial Group . . . . [of] threaten[ing] to kill a 7 yr old girl":

# Death Threats from Anthony Pellegrino's team

## Re: Reaching Out For Possible Deal : Anthony Pellegrino

listen u filthy slavic bastard. you have 24 hrs to remove eveything on Anthony and GOldstone. i wont ask again.

I know where @shanvyo lives and where her daughter goes to school in cyprus. you can remove her instagram acc but i already downloaded everything. do u want anything bad accidently happen to her daughter? ukraine is already fucked up so why dont u make some money and leave the country before the russians kill u? i hope they do.

I know you address in Kyiv. Yes I know that you are from Ukraine, so I will write in a language u will understand.I have the following news. I copied a couple of your sites the day before yesterday on new domains:

https://intelligenceline.net/
https://www.financescam.finance/

For example

I haven't done anything on these sites yet, but I think I'll get around to it in the next couple of days:
1. Index the sites
2. Optimize SEO, buy links, etc.
3. Add your details to the contact information on these sites
4. Establish contacts and demand $$$ from the subjects of the publications for deletion. In general, I will earn money on your content
5. Make 10 more copies of each site on different domains.
There are still many ideas)

How will this turn out for you?

1. Your reputation will fall after several scams of clients, because on your sites you will be able to delete the material, but not on mine). And clients will ask to delete it on all sites. 2. Or I will write to "your clients" and receive $$$ from them instead of you.
3. There will be a lot of copies and Google will "take out" a significant part of the pages from your sites from the search
4. You will spend time and resources fighting your own sites, writing complaints, etc.
5. There are still many consequences.

if u want to stay alive, if u want your editor and her cute daughter to live, u better remove the content. u have until 5th may to comply.

* * *

36.     FinanceScam asserts that as a result of these "tactics," and to "take the fight to him," it set up certain Network websites directly invoking the Plaintiffs to let "everyknow [sic] know the TRUTH BEHIND ANTHONY PELLEGRINO":

## What are we doing now?

We are not going to bow down to these threats and intimidation tactics. Anthony Pellegrnio may have money, but we have the facts on our side.

We have therefore decided to take the fight to him, cutting down his censorship efforts. We know that he has illegally taken down many adverse news articles as stated above, as well as dozens of critical videos. In addition, he has waged a campaign of Fake PR, spending a ton to create fake content and mislead his investors.

So, let's undo that.

We have set up 8 websites –

1. anthonypellegrino.net
2. anthonypellegrino.org
3. anthonypellegrinogoldstonefinancial.com
4. goldstonefinancialgroupreviews.com
5. anthonypellegrinoreview.com
6. anthonypellegrinotruth.com
7. briankorienek.net
8. goldstonefinancialgroupreview.com

With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google. Letting everyknow know the TRUTH BEHIND ANTHONY PELLEGRINO. It's typical Streisand Effect !!

You as – Why 8 websites? Well, why not. Our intention is to take their focus away from our platforms. Let them play the game on our pitch, on our terms, independant of FinanceScam.com and IntelligenceLine.com. IMHO, 8 is not enough.

37.     FinanceScam concludes this series of posts by warning "[w]ith our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google . . . . It's typical Streisand Effect !!" and "This won't end well for Anthony.  I promise him that."

22

38.     The "Streisand effect" refers to a social phenomenon where an attempt to censor information ends up drawing more attention to it.  Put another way, FinanceScam admitted it is amplifying its false content to maximize public exposure to it.

39.     FinanceScam's false accusations and threats mirror the language in its "REPUTATION MANAGEMENT SCAM ALERT", which warns that when it discovers a target is attempting to remove content via a Reputation Agency, or by any means other than its Citizen Advocacy Program, "we take action to ensure the reinstated content gets maximum exposure through our social media and newsletter mentions to over 200k subsribers [sic].  It never ends well any anyone [sic] willing to comit [sic] a crime to remove from our websites. Read about Streisand Effect !"

40.     On information and belief, FinanceScam fabricates these criminal allegations against targets who do not subscribe to its Citizen Advocacy Program, such as Plaintiffs, to ratchet up pressure on them to enroll in the program.

41.     Because Plaintiffs have not and will not enroll in Defendant's extortionist Citizen Advocacy Program, FinanceScam has continued to flood the internet with another 20 AI-generated articles repeating these false, misleading, and defamatory accusations, further damaging Plaintiffs' reputation and professional standing.  It continues to do so as of filing.

42.     Digital clues in the articles indicate this content is AI-generated, as opposed to the "user-generated reports" Defendant claims to host:



43.     On information and belief, FinanceScam will continue flooding the internet with fabricated, false, misleading, and defamatory content about Plaintiffs by harnessing the power of AI to optimize that content's prioritization by search engines.

44.     FinanceScam is also using AI tools to create YouTube videos dedicated to disparaging Mr. Pellegrino and Goldstone.  For example, the "description" for its YouTube Channel @AnthonyPellegrinoReview purports to "EXPOS[E] the shocking truth about Anthony Pellegrino and Goldstone Financial Group," which includes inviting viewers to "[d]iscover how hacking and fake PR campaigns have been used to silence criticism" and learn about "chilling death threats against critics, including a moderator and her child":



45.     These videos bear titles like "Goldstone Financial Group Fraud by Anthony Pellegrino," "Anthony Pellegrino – Cyber Criminal," and "Goldstone Financial – Fake DMCA Notices."  These videos regurgitate the same false, misleading, and defamatory content published across the Network's websites, with quotes like "[t]he story of Brian Korienek and Goldstone Financial Group is a cautionary tale of how far some will go to protect their interests, even at the cost of their integrity."[18]

**C.  Plaintiffs' Trademarks**

46.     Mr. Pellegrino owns the valid and subsisting United States Trademark Registration Nos. 4,482,963 (the "'963 Mark") and 4,342,235 (the "'235 Mark"), which are both incontestable and registered on the Principal Register in the United States Patent and Trademark Office.  Attached as Exhibit C is a true and correct copy of the registration certificates.  The '963 Mark and the '235 Mark look like this:

| '235 Mark | '963 Mark |
|---|---|
| GOLDSTONE FINANCIAL GROUP |  |

47.     In addition to its registered trademarks, Mr. Pellegrino's distinctive name has become closely synonymous with Goldstone Financial Group and conveys that association to consumers.  (Exhibit C.)  As a result of Plaintiffs' widespread, continuous, and exclusive use of "ANTHONY PELLEGRINO" in connection with financial advisory and consulting services, Mr.

---

[18] https://www.youtube.com/watch?v=fPafLEWHR9Y (at 1:43).

Pellegrino owns valid and subsisting federal statutory and common law rights to his name (collectively with the '963 Mark and '235 Mark, the "Marks"). Indeed, as FinanceScam itself proclaims, "Anthony Pellegrino is a name that has become synonymous with financial advisory in the United States."[19]

48.     Brian Korienek is a Goldstone Partner and its Vice President of Wealth Management. As a senior member of Goldstone, consumers also closely associate his name with Plaintiffs' financial advisory services.

49.     Plaintiffs have used the Marks in commerce throughout the United States continuously since at least May 1, 2008, in connection with financial advisory and consultancy services, including prominently on their website:[20]

---

[19] https://www.goldstonefinancialgrouppreview.com/anthony-pellegrino-review/128977056/review

[20] https://www.goldstonefinancialgroup.com/our-team/



**GOLDSTONE** FINANCIAL GROUP

ABOUT US ▾   SERVICES ▾   RESOURCES ▾   CLIENT TESTIMONIALS   WHY US ▾
EVENTS ▾   CONTACT

## What We Do

Our experienced team of professionals will help ensure you receive top-tier service with a plan tailored to your retirement goals. Our team works diligently to help you feel confident knowing our plan will not only get you retired, but stay retired.

## Meet Our Team



### FOUNDER & CEO

### Anthony Pellegrino

Anthony Pellegrino has dedicated his practice not only to helping individuals plan for their financial future, but also remaining by their side as a partner in achieving their desired results.

LEARN MORE ABOUT ANTHONY



### PARTNER & VICE PRESIDENT OF WEALTH MANAGEMENT

### Brian Korienek



As partner and a member of Goldstone's leadership team, Brian guides individuals and families on a path toward a financially secure retirement. Brian has a natural passion for crafting the ideal investment portfolio to suit each client's unique set of needs and goals.

LEARN MORE ABOUT BRIAN

50.     Plaintiffs' Marks are distinctive to both the consuming public and within the trade.

51.     As a result of Plaintiffs' expenditures and efforts, the Marks have come to signify high quality financial advisory services, and as such have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

**D.      Defendant's Infringement and Squatting on the Marks**

52.     Upon information and belief, on or around May 5, 2025, Defendant registered the following eight domain names (the "Domain Names") with the registrar GoDaddy.com, LLC (the "Registrar"):

We have set up 8 websites –

1. anthonypellegrino.net
2. anthonypellegrino.org
3. anthonypellegrinogoldstonefinancial.com
4. goldstonefinancialgrouppreviews.com
5. anthonypellegrinoreview.com
6. anthonypellegrinotruth.com
7. briankorienek.net
8. goldstonefinancialgrouppreview.com

With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google. Letting everyknow know the TRUTH BEHIND ANTHONY PELLEGRINO. It's typical Streisand Effect !!

53.     Defendant is currently the registrant of the Domain Names. Attached to the Complaint as Exhibit D is a true and correct copy of the heavily obfuscated WHOIS records for the Domain Names as of June 27, 2025.

54.     Although the WHOIS record does not disclose the identity of the Domain Names' registrant, FinanceScam repeatedly identifies itself as the owner, and on information and belief it is:[21]

On Mon, May 5, 2025 at 2:21 AM <hello@criticalintel.com> wrote:

- anthonypellegrino.net
- anthonypellegrino.org
- goldstonefinancialgroupreviews.com
- anthonypellegrinogoldstonefinancial.com
- briankorienek.net
- goldstonefinancialgroupreview.com
- anthonypellegrinotruth.com
- anthonypellegrinoreview.com

If you file another fake DMCA, or threaten us, we will come up with 8 new sites.

55.     These Domain Names are identical or confusingly similar to Plaintiffs' Marks, which were distinctive when Defendant registered them.  Further, FinanceScam was knowingly aware of Plaintiffs' rights in the Marks when it selected and registered these Domain Names, and knowingly and intentionally registered them because of that similarity and consumer association back to Plaintiffs.

56.     Defendant has no rights in or to any trademark or name that is similar to these Domain Names and is not known by any name that is similar to them. Upon information and belief, Defendant had no legitimate purpose for registering these Domain Names and did so only with bad faith intent to damage Plaintiffs, their Marks, and profit from the goodwill in the Marks.

---

[21] *See also* https://www.goldstonefinancialgroupreview.com/anthony-pellegrino-review/128942/review

57.     Beyond these Domain Names, FinanceScam also prominently uses the Marks in

its content:[22]

---

[22] https://www.goldstonefinancialgroupreview.com/anthony-pellegrino-
review/128976999/review



58. On information and belief, Defendant intentionally incorporates the Marks into its content to maximize the likelihood that search engines will prioritize its content for returns on searches for the Marks.

59.     In turn, Defendant monetizes this web traffic by attracting additional "subscribers" to its various Network accounts and extorting higher payments out of its targets.

60.     Defendant's conduct is willful, with the deliberate intent being to trade on the goodwill of Plaintiff's Marks, cause confusion and deception online and in the marketplace, and improperly divert consumers searching for the Marks to Defendant's Network of false, misleading, and defamatory content—all with the end goal of extracting payments from Plaintiffs.

61.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiffs and to their valuable reputation and goodwill with the consuming public for which Plaintiffs have no adequate remedy at law.

### COUNT ONE
### Cybersquatting, 15 U.S.C. § 1125(d)

62.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

63.     Plaintiff owns all rights in and to the Marks, which are strong and distinctive, and were so as of the date that Defendant registered the Domain Names.

64.     Defendant registered, used, and trafficked in the Domain Names, which are identical, confusingly similar to, and dilutive of Plaintiffs' Marks.

65.     Defendant registered, used, and trafficked in the Domain Names with a bad faith intent to profit from their confusing similarity to Plaintiffs' Marks.

66.     Defendant's conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to damage the Plaintiffs unless enjoined by this court. Plaintiffs have no adequate remedy at law.

67.     Plaintiffs are entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other things, injunctive relief against the Domain Names identified above, as well as any similar domain names Defendant may register, transfer of all these domain names to Plaintiffs, and an order barring Defendant or anyone on its behalf from setting up further such domain names.

68.     Plaintiffs are further entitled to recover their damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a). Alternatively, Plaintiffs are entitled to maximum statutory damages of $100,000 for each of the Domain Names pursuant to 15 U.S.C. § 1117(d).

69.     Plaintiffs are further entitled to recover their attorneys' fees and costs, together with prejudgment and post-judgment interest.

## COUNT TWO
## Federal Trademark Infringement, 15 U.S.C. § 1114

70.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

71.     Without authorization, FinanceScam repeatedly and consistently incorporates Plaintiffs' Marks into its content.  The reason for doing so is to increase the likelihood that a search engine, like Google, will rank its content highly to consumers who search for the Marks. In its own words, Defendant incorporates the Marks into its articles so that they "will rank on page #1 on Google" and will ensure its "maximum exposure."

72.     As an example, one of Defendant's webpages depicting an article titled "Anthony Pellegrino: A Financial Advisor Legacy of Fraud and Deception" uses the '235 Mark twelve times, "Anthony Pellegrino" nine times, and the '963 Mark once.

73.     Because of Defendant's use of the Marks, financial advisory consumers searching for Plaintiffs are redirected by their search engines to Defendant's content. As this cycle repeats

34

itself, search engines prioritize those results higher, resulting in more consumer exposure to the content.

74.      Defendant monetizes this consumer confusion as web traffic that it then uses to extort higher financial demands from Plaintiffs, as evidenced by its prominent invitation to sign up for its Citizen Advocacy Program directly adjacent to its unlawful use of the Marks:

### Parogan, Olympus Prime, and Asgard

Israeli online businesses now have strongholds in Belgrade and Limassol. Belgrade has a booming boiler room scene that is still…

### Ken Alston Operated in Regulatory Shadows Through Offshore Havens

Ken Alston operated from jurisdictions known for weak oversight, enabling him to evade accountability, obscure fund movements, and shield assets…



**Beware of Reputation Agencies**
claiming to suppress or remove content from this website

**Read our Warning**



**Repair your Reputation the correct way**

**Citizen Advocacy Program**



## The Deceptive Facade of Goldstone Financial Group

### Anthony Pellegrino's Financial Web: A Risk-Laden Operation Disguised as Retirement Planning

Goldstone Financial Group claims to offer financial stability for retirees—but the firm's track record paints a picture of reckless greed. Goldstone aggressively pushed clients into non-traded REITs and high-fee annuities, while reaping windfalls from unregistered securities such as those tied to the infamous 1 Global Capital scandal. Pellegrino and his brother Michael, Goldstone's co-founder, reportedly pocketed $1.6 million in commissions from 1 Global—an eye-popping 4.3% fee, dwarfing industry norms. This isn't strategic investing; it's profiteering at the expense of retirees.

Despite having SEC and insurance licenses, Goldstone's practices routinely skirt the edges of compliance, as evidenced by the 11 client disputes lodged between 2015 and 2019 alone. These complaints—centered on excessive fees, unsuitable investments, and breaches of fiduciary duty—reveal a culture of self-enrichment rather than financial stewardship. While Pellegrino claims legitimacy through his media appearances, what lies underneath is a network of opaque practices, ethically questionable partnerships, and aggressive marketing tactics aimed at vulnerable investors.

### The Man Behind the Mask: Anthony Pellegrino's Contradictory Persona



75. Thus, Defendant is intentionally using the Marks in commerce to trade off of the reputation and goodwill they embody by creating consumer confusion at the initial point of sale, constituting federal trademark infringement.

76. As a direct and proximate result of Defendant's trademark infringement, Plaintiffs are entitled to recover actual damages in an amount to be proven at trial. Indeed, Plaintiffs are aware of actual confusion in the marketplace. As of filing, several potential clients canceled meetings, citing Defendant's false and defamatory content.

77. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and their valuable Marks, and will continue to do so unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

78. Defendant's conduct as alleged constitutes an exceptional case under 15 U.S.C. § 1117, entitling Plaintiffs to their attorneys' fees and costs incurred in this action.

## COUNT THREE
### False Advertising, 15 U.S.C. § 1125(a)

79. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

80. Defendant has made and distributed in interstate commerce and in this judicial district advertisements that contain false and misleading representations of fact.

81. Specifically, Defendant claims to be a "team of journalists, investigators, and activists" that leverages "public collaboration" to provide "accurate, quality reporting on crime and corruption" with the aim of "inform[ing] the public, assist[ing] compliance professionals, and hold[ing] bad actors accountable."[23]

---

[23] https://www.financescam.com/about/

82. On information and belief, all of these statements are false. In fact, Defendant is an extortionist enterprise promulgating false, misleading, and defamatory content about targets, whom it then charges to remove the content.

83. These statements actually deceive, or have a tendency to deceive, a substantial segment of potential and current financial advisory consumers into believing they are reading user submitted complaints curated by a team of journalists, when in fact that are reading content designed to defame and extort targets like Plaintiffs.

84. This deception is material in that it concerns the inherent quality, characteristics, value, and performance of the services Plaintiffs provide, and so these deceptions injure both Plaintiffs and consumers. For example, Defendant repeatedly and falsely touts its "background investigating financial crimes" and interest in "protecting the public trust in our judicial system" to falsely and deceptively lend credibility to its claim that it is serving the public interest by "taking down scumbags like Anthony Pellegrino and Goldstone Financial Group."

85. Defendant's false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiffs, including injury to their business, reputation, and goodwill, for which there is no adequate remedy at law. Plaintiffs are therefore entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with Defendants from engaging in future acts of false advertising.

86. Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover from Defendant the damages sustained by them as a result of Defendant's actions in violation of 15

U.S.C. § 1125(a). Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have sustained by reason of Defendant's acts.

87.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover from Defendant the gains, profits, and advantages that it has obtained as a result of its acts in violation of 15 U.S.C. § 1125(a). Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have sustained by reason of Defendant's acts.

88.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Moreover, on information and belief, Defendant's conduct has been undertaken willfully and with the intention of causing confusion, mistake, or deception, and with the purpose of harming Plaintiffs' reputation and sales, and to produce financial and reputational gain for itself, making this an exceptional case entitling Plaintiffs to recover additional damages and reasonable attorneys' fees.

## COUNT FOUR
### Illinois Defamation Per Se

89.     Plaintiffs reallege and incorporate the previous paragraphs as if fully set forth herein.

90.     Defendant published or caused to be published and continues to publish false and defamatory statements about Plaintiffs across its Network.

91.     Examples of statements that are per se defamatory because they falsely assert as fact that Plaintiffs committed criminal conduct, include:

(a)     "Anthony Pellegrino and his Reputation Managers are blatantly committing serious crimes in trying to censor information on Google"

(b) "Anthony Pellegrino hired hackers to hack multiple websites, and file dozens of fraudulent copyright takedown notices since April 2023."

(c) "Anthony Pellegrino – Forging Court Orders and Judge's Signature"

(d) "At this time, while everyone in Ukraine is fighting on multiple fronts, we have another front to fight on. And that's taking down scumbags like Anthony Pellegrino and Goldstone Financial Group, who would forge court orders, impersonate a judge, impersonate a lawfirm, threaten to kill a 7 yr old girl and wish that Russians kill Ukrainians like us."

(e) Accusing Plaintiffs of committing "Fraud, Impersonation, and Perjury."

92. All of these statements are false on their face.

93. Examples of statements that are per se defamatory because they falsely impute an inability to perform or want of integrity in performing employment duties, and otherwise prejudice Plaintiffs in their profession include:

(a) "Anthony Pellegrino the Fraudulent Mastermind Behind Goldstone's Collapse."

(b) Accusing Mr. Pellegrino of "herding [clients] into a slaughterhouse for secret profits" which "transformed Goldstone into a parasitic entity, feasting on the trust of those it was meant to protect."

(c) "[E]xtinguishing hope, leaving a legacy of anguish" and "revealing the festering underbelly of unchecked avarice."

94. These statements are defamatory on their face because they falsely portray Plaintiffs as dishonest, unethical, and engaged in criminal conduct, which directly harms their reputation in the financial industry.

40

95.     On information and belief, Defendant acted with actual malice, meaning it knew the statements were false or acted with reckless disregard for the truth.

96.     Despite knowing the falsity of their statements, Defendant refused to retract or correct them.  Instead, they amplified their defamatory campaign to further drive Plaintiffs to pay for their removal, demonstrating their malicious intent.

97.     As a direct and proximate result of Defendant's false and defamatory statements, Plaintiffs have suffered severe reputational harm, loss of business opportunities, corrective advertising outlays, and financial damages in an amount to be proven at trial.

98.     Defendants acted with actual malice.  Because Defendant's conduct was willful, fraudulent, and malicious, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants and deter similar misconduct in the future.

## COUNT FIVE
### Illinois False Light

99.     Plaintiffs incorporate the previous paragraphs as if fully set forth herein.

100.    For the reasons explained in the preceding sections of this Complaint, Defendant's actions have placed Plaintiffs in a false light before the public at least because Plaintiffs have not committed, directly or indirectly, any "serious crimes in an attempt to censor information"—including threatening to kill a 7 year old girl or disparaging Ukrainians.

101.    This false light would be and is highly offensive to a reasonable person.

102.    As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered severe reputational harm, loss of business opportunities, corrective advertising outlays, and financial damages in an amount to be proven at trial.

103.     Defendant acted with actual malice.  Because Defendant's conduct was willful, fraudulent, and malicious, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish Defendants and deter similar misconduct in the future.

## COUNT SIX
### Illinois Trade Libel (Commercial Disparagement)

104.      Plaintiffs reallege and incorporate the previous paragraphs as if fully set forth herein.

105.     For the reasons explained herein, Defendant made and continues to make false and defamatory statements about both itself (that it is an investigative journalist outfit posting user submitted content in an effort to serve the public good) and Plaintiffs (that they are unethical, criminals, fraudsters, and the like).

106.     Defendant published these statements to third parties and financial advisory consumers via the Network.

107.     Plaintiffs' business suffered actual damages as a result of Defendant's publishing of these false and defamatory statements, including but not limited to severe reputational harm, loss of business opportunities, corrective advertising outlays, and financial damages in an amount to be proven at trial

108.     Defendant made these statements with actual malice or with reckless disregard for the truth.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendant as follows:

1.     That Defendant be adjudged to have violated Lanham Act 15 U.S.C. § 1125(d) (cybersquatting), 15 U.S.C. § 1114 (trademark infringement), and 15 U.S.C. § 1125(a) (false advertising) in connection with their content on the Network.

2.     That Defendant be adjudged to have violated Illinois law by committing defamation per se, false light, and trade libel (commercial disparagement) in connection with their content on the Network.

3.     Ordering Defendant to, within ten (10) days of the entry of final judgment, transfer to Plaintiffs' registration of the eight Domain Names and registrations of any other domain names owned or controlled by Defendant that are confusingly similar to Plaintiffs' Marks.

4.     Ordering that the Registrar, upon Plaintiffs' request, transfer registration of the Domain Names to Plaintiffs.

5.     Granting injunctions that both temporarily and permanently enjoin the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, assigns, and all of those in active concert and participation with it from:

   a.  owning, registering, trafficking in, or otherwise using any of the Domain Names or any future domain name substantially similar to the Domain Names or Marks;

   b.  engaging in any activity that infringes Plaintiffs' rights in its Marks;

   c.  publishing, disseminating, or republishing any statements that falsely represent its true business nature;

   d.  publishing, disseminating, or republishing any false or defamatory statements concerning Plaintiffs;

   e.  engaging in further acts of false advertising or commercial disparagement;

f.  portraying Plaintiffs in a false light or otherwise misrepresenting Plaintiffs' actions,

services, or reputation to the public or any third party;

g.  using Plaintiffs' names, likenesses, or brands in any false or misleading context;

h.  registering or applying to register any trademark, service mark, domain name, trade

name, or other source identifier or symbol of origin consisting of or incorporating any

mark that infringes or is likely to be confused with Plaintiffs' Marks, or any of Plaintiffs'

services; and

i.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited

by sub-paragraphs (a) through (h).

6.     Ordering Defendant to remove and retract all false and defamatory statements, and

to issue a corrective statement to mitigate harm caused.

7.     Granting such other and further relief as the Court may deem just and proper to

prevent the public and trade from deriving the false impression that any website operated by

Defendant is in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or

associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with

Plaintiffs' services.

8.     Ordering, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)),

Defendant to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after

issuance of an injunction in this action, or such extended period as the court may direct, a report

in writing under oath setting forth in detail the manner and form in which Defendant has

complied therewith.

9.     Awarding Plaintiffs, upon their election, either:

a.  an amount up to three times the amount of its actual damages and all of

Defendant's profits realized by its wrongful acts alleged herein, enhanced as

appropriate to compensate Plaintiff for the damages caused thereby, in accordance

with Section 35(a) and (b) of the Lanham Act (15 U.S.C. § 1117(a), (b)); or

b.  maximum statutory damages in the amount of $100,0000 per domain name

found to be in violation of Section 43(d) of the Lanham Act (15 U.S.C. §

1125(d)), in accordance with Section 35(d) of the Lanham Act (15 U.S.C. §

1117(d)).

10.    Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham

Act and awarding Plaintiffs their costs and reasonable attorneys' fees thereunder (15 U.S.C. §

1117(a)).

11.    Awarding Plaintiffs interest, including prejudgment and post-judgment interest, on

the foregoing sums.

12.    Awarding Plaintiffs punitive and exemplary damages as the Court finds appropriate

to deter any future similar conduct.

13.    Awarding such other and further relief as the Court deems just and proper.

Dated:   June 27, 2025

Respectfully submitted,

/s/  James J. Saul
James J. Saul
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street
Suite 3300
Chicago, IL 60606
312 356 5053
james.saul@faegredrinker.com

*Attorney for Plaintiffs Goldstone Financial*
*Group and Anthony Pellegrino*