**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GOLDSTONE FINANCIAL GROUP, LLC and ANTHONY PELLEGRINO, <br><br> Plaintiffs, <br><br> v. <br><br> FINANCESCAM.COM <br><br> Defendant. | Case No. 1:25-cv-07283-SRH <br><br> **JURY TRIAL DEMANDED** |

**MOTION TO CONVERT TEMPORARY RESTRAINING ORDER TO PRELIMINARY INJUNCTION**

**Introduction**

Plaintiffs Goldstone Financial Group, LLC ("Goldstone") and Anthony Pellegrino (Mr. Pellegrino) respectfully move to convert the Temporary Retraining Order granted on July 24, 2025 to a preliminary injunction against Defendant financescam.com ("FinanceScam") so that Defendant remains enjoined from continuing its unlawful campaign against Plaintiffs while this case remains pending.

**Background**

As set forth in detail in Plaintiffs' Complaint and Motion for a Temporary Restraining Order Bridging to a Preliminary Injunction ("TRO Motion"), Defendant FinanceScam posts negative defamatory content about Plaintiffs—ranging from assertions of fraud to truly outlandish accusations of threatened murder—across a network of websites and social media channels. (*See generally* Dkts. 1, 12.) To increase exposure and ensure maximum harm to Plaintiffs, Defendant employs unlawful tactics to drive internet traffic to its false and defamatory content, including embedding Plaintiffs' trademarks into the content of its articles and registering numerous domain

names that incorporate in whole Plaintiffs' trademarks. (*See id*.) Plaintiffs moved for a Temporary Restraining Order ("TRO") to enjoin Defendant's unlawful conduct on July 11, 2025, and the Court granted the TRO on July 24, 2025 after finding that Plaintiffs had demonstrated a likelihood of success on the merits of their claims, had no adequate remedy at law, and would suffer immediate and irreparable harm without the requested relief. (Dkt. 20.) Pursuant to the Court's Order, Plaintiffs served the TRO and accompanying motion papers on Defendant on July 25, 2025. (Ex. 1.)[1]

Plaintiffs now respectfully request that the Court convert the TRO to a preliminary injunction against Defendant, so that Defendant remains enjoined and restrained from, *inter alia*, registering and using internet domains that incorporate Plaintiffs' trademarks, transferring any of the Network domains (identified in Dkt. 1-1) pending final adjudication of this litigation, and publishing, republishing, maintaining, or operating any website that contains statements falsely impugning Plaintiffs' professional integrity or character or falsely implying Plaintiffs have engaged in illegal, unlawful, unethical, or immoral conduct.

### I. A Preliminary Injunction Extending the Relief Granted in the TRO is Appropriate.

Plaintiffs respectfully request that this Court convert the TRO to a preliminary injunction to prevent Defendant from engaging in unlawful conduct during the pendency of this litigation.

The legal standard for a temporary restraining order and a preliminary injunction are the same. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (2022). Accordingly, once a plaintiff has demonstrated "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[1] Plaintiffs also served their Complaint and Motion for a Temporary Restraining Order Bridging to a Preliminary Injunction on Defendant via email on July 15, 2025 and advised Defendant of the July 22 hearing date on Plaintiffs' Motion.

balance of equities tips in his favor, and that an injunction is in the public interest," the requirements for entry of a preliminary injunction extending the TRO have been satisfied. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Court previously concluded that Plaintiffs satisfied each of these factors, (Dkt. 20), and each factor continues to favor Plaintiffs and warrant entry of a preliminary injunction.

    A.    **Plaintiffs Are Likely to Succeed on Their Claims**

As set forth in Plaintiffs' TRO Motion, Plaintiffs are likely to succeed on their claims against Defendant for cybersquatting, trademark infringement, false advertising, defamation *per se*, false light, and trade libel.[2]

***Cybersquatting***: To succeed on a cybersquatting claim, Plaintiffs must establish that (1) Defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a distinctive mark owned by Plaintiffs; and (3) Defendant acted with a bad faith intent to profit from Plaintiffs' mark. *Estate of Maier v. Goldstein*, 2017 WL 5569809, at *7 (N.D. Ill. Nov. 20, 2017). Here, Defendant set up at least 8 websites with domain names that incorporate "Goldstone Financial Group," "Anthony Pellegrino," and/or "Brian Korienek," as shown below:

---

[2] Plaintiffs note that their TRO Motion mistakenly indicated that the standard for showing likelihood of success on the merits at the preliminary injunction stage is "better than negligible." Plaintiffs recognize this standard is no longer the applicable standard in the Seventh Circuit. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. Sept. 3, 2020). As demonstrated herein, Plaintiffs have made a strong showing of likelihood of success, setting forth in detail how they propose to prove the key elements of their case, and therefore satisfy the current standard applicable in the Seventh Circuit. *Id.*

> We have set up 8 websites –
>
> 1. anthonypellegrino.net
> 2. anthonypellegrino.org
> 3. anthonypellegrinogoldstonefinancial.com
> 4. goldstonefinancialgroupreviews.com
> 5. anthonypellegrinoreview.com
> 6. anthonypellegrinotruth.com
> 7. briankorienek.net
> 8. goldstonefinancialgroupreview.com
>
> With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google. Letting everyknow know the TRUTH BEHIND ANTHONY PELLEGRINO. It's typical Streisand Effect !!

(Dkt. 1 ¶ 36.) Mr. Pellegrino owns an incontestable, federal trademark registration for GOLDSTONE FINANCIAL GROUP, and Plaintiffs possess common law rights in the distinctive names of Goldstone's Founder and CEO (Anthony Pellegrino) and Vice President (Brian Korienek). (*Id*. ¶¶ 46-48.) Defendant's entire business model relies on generating and directing internet traffic to false and defamatory content about Plaintiffs so that Defendant can extort compensation from Plaintiffs to remove the false and misleading content through its so-called Citizen Advocacy Program. (Compl. ¶¶ 16-25.) When Plaintiffs refused to engage, Defendant registered the domains to maximize internet traffic to false and defamatory information about Plaintiffs. (Compl. ¶¶ 52 ("With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google Letting everyknow know [sic] the TRUTH BEHIND ANTHONY PELLEGRINO"); ECF 2-4 ("If you file another fake DMCA, or threaten us, we will come up with 8 new cites.").) There is hardly a clearer example of bad faith. *See* 15 U.S.C. § 1125(d)(1)(B) (identifying "intent to divert consumers" and "registration or acquisition of multiple domain names" incorporating plaintiff's mark or distinctive name as indicative of bad faith). Plaintiffs have therefore demonstrated a likelihood of success on the merits of this claim.

*Trademark Infringement*: To succeed on its trademark infringement claim, Plaintiffs must show that their mark is protectable and (2) Defendant's use of the mark is likely to cause consumer confusion. *Venus Lab'ys., Inc. v. Vlahakis*, 2015 WL 1058264, at *2 (N.D. Ill. Mar. 5, 2015) (citing *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)). Here, Defendant uses Plaintiffs' federally registered and common law trademarks within its defamatory articles to divert consumers searching for Plaintiffs to Defendant's content. (Dkt. 1 ¶ 20.) Defendant's conduct creates confusion by baiting search engine algorithms to promote and return Defendant's content, which in turn misdirects consumers searching for Plaintiffs' Marks. *Pure Imagination v. Pure Imagination Studios, Inc.*, 2004 WL 2967446, at *8 (N.D. Ill. Nov. 15, 2004). Indeed, FinanceScam *brags* about using this confusion technique. (Compl. ¶ 37 (("With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google[.]").) Such conduct is intended to cause, and indeed has already caused, confusion among consumers. (Dkt. 12-2 ("Pellegrino Decl.") ¶ 9.) Accordingly, Defendant "improperly reap[s] the goodwill" Plaintiffs have developed in their marks by weaponizing the goodwill they embody *against* the Mark's owners. *See Pure Imagination*, 2004 WL 2967446, at *8. Plaintiffs have demonstrated a likelihood of success on their trademark infringement claim.[3]

*False Advertising*: To succeed on their false advertising claim, Plaintiffs must show "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result." *Dyson, Inc. v. Sharkninja Operating LLC*, 259 F. Supp.

---

[3] Plaintiffs TRO Motion includes an analysis of the relevant likelihood of confusion factors. (Dkt. 12.)

3d. 816, 828 (N.D. Ill. 2017). Defendant—a network purportedly based in Ukraine that uses AI to create false and defamatory information to extort payment from its targets—falsely holds itself out as a legitimate journalistic outfit committed to "hold[ing] bad actors accountable." (Compl. ¶ 81.) Such statements tend to deceive consumers into believing that FinanceScam is a legitimate website that posts objective and factual content, and this misrepresentation is no doubt material to consumers searching for reputable financial services. Ultimately, this harms both the consuming public and Plaintiffs since the former are led into believing the misinformation, thereby damaging the reputation of Plaintiffs and costing Plaintiffs potential clients. (*See* Pellegrino Decl. ¶ 9.) The beneficiary of all this is FinanceScam, which both attracts subscribers under false pretenses and, as a direct consequence, obtains great leverage to extort higher takedown payments from its targets.

**State Law Claims**: To succeed on their state law claims for defamation *per se*, false light, and trade libel, Plaintiffs must show that Defendant's malicious content casts Plaintiffs in a false light before the consuming public to their detriment.[4] Defendant has accused Plaintiffs of a range of unlawful and egregious conduct, ranging from "committing serious crimes" and filing "dozens of fraudulent copyright takedown notices" to forging court orders, impersonating a judge and a law firm, and threatening to kill a child. (Compl. 91, 93.) These statements are false, (Pellegrino Decl. ¶¶ 7, 8.), highly offensive to any reasonable person, and have caused and are causing actual

---

[4] As relevant here, Illinois defamation *per se* merely requires that a plaintiff show the defendant published a false statement imputing either (1) the commission of a crime, (2) an inability to perform or want of integrity in performing employment duties, or (3) a lack of ability or that otherwise prejudice a person in his or her profession or business. *Svanaco, Inc. v. Brand,* 417 F. Supp. 3d 1042, 1061 (N.D. Ill. 2019). The elements of Illinois false light are that (1) the defendant's actions placed the plaintiff in a false light before the public, (2) the false light would be highly offensive to a reasonable person, and (3) the defendant acted with actual malice. *Barrett v. Fonorow*, 343 Ill. App. 3d 1184, 799 N.E.2d 916 (2003). The elements of trade libel/commercial disparagement are that the defendant (1) made a false and defamatory statement, (2) the statement was published to a third party, (3) the plaintiff's business suffered actual damages as a result, and (4) the statement was made with actual malice or reckless disregard for the truth. *Allcare, Inc. v. Bork*, 176 Ill. App. 3d 993, 531 N.E. 2d 1033 (1988).

and irreparable harm to Plaintiffs' business and reputation.[5] (*Id.* ¶¶ 9, 10.) FinanceScam made these statements with the malicious and express purpose of damaging Plaintiffs' reputation, such that it would pay to take the content down. (Dkt. 1 ¶¶ 36-37.) Accordingly, Plaintiffs are likely to succeed on these state law claims.

      **B.**      **Goldstone Is Suffering Irreparable Harm which Will Compound Without Continued Injunctive Relief.**

The harms caused by Lanham Act violations such as those committed by Defendant are presumed irreparable. 15 U.S.C. §1116 (codifying presumption of irreparable harm). But even absent such a presumption, Defendant's actions have damaged Plaintiffs' reputation and goodwill, costing Plaintiffs' business. (Pellegrino Decl. ¶¶ 9, 10.) Such loss of control over their business reputation, loss of trade, and loss of goodwill is the textbook definition of irreparable harm. *See, e.g.*, *Opticians Ass'n of Am. V. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("[I]rreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade and loss of goodwill."). Plaintiffs have no adequate remedy at law for this conduct, and the damages to Plaintiffs' reputation will only increase if Defendant is not enjoined from its unlawful conduct for the remainder of this litigation. Indeed, Defendant previously threated to escalate its defamatory campaign against Plaintiffs when first provided notice of this lawsuit. (Dkt. 12-1.) Defendant's conduct strongly favors continued injunctive relief to preserve the current status quo and prevent Defendant from making good on its threats to further harm Plaintiffs' reputation and goodwill.

---

[5] IntelligenceLine, one of the domains listed on Exhibit A to the Complaint, purports to have a daily reach of over 100,000 people. https://www.intelligenceline.com/criticalintel/. FinanceScam.com's page on Mr. Pellegrino purports to include comments from thirty-eight individuals. https://www.financescam.com/dossier/anthony-pellegrino/. FinanceScam's YouTube videos have been viewed at least a combined 75 times. https://www.youtube.com/@GoldstoneFinancialGroupReview/videos; https://www.youtube.com/@AnthonyPellegrinoReview. These totals are increasing daily.

### C. FinanceScam Has No Relevant "Equities"

FinanceScam appears to be an overseas scammer that has no good faith basis for any of its conduct. In contrast, Goldstone is actively being harmed by FinanceScam's malicious falsehoods. (Pellegrino Decl. ¶¶ 9, 10.) The balance of equities therefore favors Plaintiffs. *See Monex Deposit Corp. v. Gilliam*, No. SACV 09-287-JVS(RNBx), 2010 WL 2349095, at *7 (C.D. Cal. June 1, 2010) (broadly enjoining extortion and defamation).

### D. Preliminary Relief Is in The Public Interest.

Finally, the public has an interest in truthful information, and it is in the public interest to prevent consumer confusion. *See Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 952 (N.D. Ill. June 7, 2002) (The public interest "is served . . . because enforcement of the trademark laws prevents consumer confusion."). In contrast, Defendant is confusing the consuming public by hijacking Plaintiffs' Marks and reputation to disseminate false, deceptive content. This factor favors an injunction. *See, e.g.*, *Int'l Profit Assocs. v. Paisola*, 461 F. Supp. 2d 672, 680 (N.D. Ill. 2006) (entering a TRO to staunch the spread of defamatory statements). *See also Int'l Kennel Club*, 846 F.2d at 1092 n.8 ("[T]he relevant consideration [in determining whether the public interest will be disserved by the grant of an injunction] is the consumer's interest in not being deceived[.]") (quoting *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 909 (7th Cir.1986)).

\* \* \* \* \*

Applying the sliding scale approach employed by the Seventh Circuit, Plaintiffs strong showing of likelihood of success on the merits, coupled with the presumption of irreparable harm and the remaining *Winter* factors weighing in Plaintiffs' favor, warrant entry of a preliminary injunction. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 666 (7th Cir. 2015) (applying sliding scale approach to affirm grant of a preliminary injunction); *USA-Halal Chamber of Commerce, Inc. v.*

*Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 439 (N.D. Ill. 2019) (granting preliminary injunction and TRO on a trademark claim because balance of factors favored injunctive relief).

\* \* \* \* \* \* \* \*

For the reasons explained above, Plaintiffs request a preliminary injunction that extends all relief previously granted in the TRO during the pendency of this litigation. A proposed order is submitted herewith.

Dated: July 31, 2025

/s/ *James J. Saul*
James J. Saul
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street
Suite 3300
Chicago, IL 60606
312 356 5053
james.saul@faegredrinker.com

*Attorney for Plaintiffs Goldstone Financial Group and Anthony Pellegrino*