IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GOLDSTONE FINANCIAL GROUP, LLC and ANTHONY PELLEGRINO,<br><br>  Plaintiffs,<br><br>  v.<br><br>FINANCESCAM.COM<br><br>  Defendant. | Case No. 1:25-cv-07283-SRH<br><br>**JURY TRIAL DEMANDED** |

## MOTION FOR DEFAULT JUDGMENT

Plaintiffs Goldstone Financial Group, LLC ("Goldstone") and Anthony Pellegrino (Mr. Pellegrino) (collectively, "Plaintiffs") move for a default judgment against Defendant financescam.com ("FinanceScam"). As set forth herein, Plaintiffs seek statutory damages, transfer of eight domain names, and a permanent injunction consistent with the preliminary injunction granted by this Court on August 6, 2025.

### I. PROCEDURAL HISTORY

On June 26, 2025, Plaintiffs filed their Complaint against FinanceScam asserting claims for cybersquatting, trademark infringement, false advertising, defamation, false light, and trade libel. (ECF 1.) Pursuant to this Court's Order authorizing service of the Complaint by electronic service, Plaintiffs served the operative Complaint (ECF 1), Motion for Alternative Service (ECF 2), Order on Motion for Alternative Service (ECF 8), Summons (ECF 11), Motion for Temporary Restraining Order (ECF 12), and Notice of in-person Hearing (ECF 13), along with their associated papers, on FinanceScam. (ECF 14). Despite having received and acknowledged notice of the lawsuit and TRO (*see* ECF 30-2), FinanceScam failed to plead or otherwise respond to the

Complaint by August 5, 2025. Accordingly, on August 28, 2025, this Court entered an order directing the clerk of court to enter default against FinanceScam. (ECF No. 36.)

## II. LEGAL STANDARD

Where, as here, a defendant is found in default, "all factual allegations in the complaint are deemed admitted and not subject to challenge." *U.S. Bank Nat'l Ass'n v. Silver*, 2013 WL 6353727, at *2 (N.D. Ill. Dec. 4, 2013). While a default judgment "conclusively establishes liability," it "does not answer whether any particular remedy is appropriate." *Hughes v. United Debt Holding, LLC*, 2018 WL 11436781, at *1 (N.D. Ill. Nov. 1, 2018) (internal quotation marks and citations omitted). Accordingly, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty" or may alternatively enter default judgment without a hearing on damages if the amount claimed is "capable of ascertainment from definite figures contained in the documentary evidence or details in the affidavits." *Id*.

## III. ARGUMENT

### A. Plaintiffs Are Entitled to a Judgment in Their Favor on All Claims

In granting Plaintiffs' Motion for Preliminary Injunction, the Court found that "Plaintiffs have shown a likelihood of success on the merits of their claims for cybersquatting, trademark infringement, false advertising, defamation per se, false light, and trade libel." (ECF 29.) Because Defendant's default conclusively establishes liability, *see Hughes*, 2018 WL 11436781, at *1, Plaintiffs are entitled to a final judgment of liability on each of the claims asserted in the Complaint.

### B. Plaintiffs Are Entitled to a Judgment of Statutory Damages and Transfer of the Domain Names Under the ACPA

The Anticybersquatting Consumer Protection Act (ACPA) prohibits registering a domain name that is identical or confusingly similar to the distinctive mark of another with a bad faith intent to profit from the mark. 15 U.S.C. § 1125(d)). The ACPA authorizes the plaintiff to elect to recover statutory damages up to $100,000 per domain name, as the Court considers just. 15 U.S.C. § 1117(d). The ACPA likewise authorizes the Court to order the transfer of the domain name to the owner of the mark. 15 U.S.C. § 1125(d)(1)(C).

Here, the Court has determined based on the well-pled allegations in Plaintiffs' Complaint that Plaintiffs are likely to succeed on their cybersquatting claim against FinanceScam based on FinanceScam's bad faith registration of eight domains incorporating Plaintiffs' federally registered and common law trademarks: (1) anthonypellegrino.net; (2) anthonypellegrino.org; (3) anthonypellegrinogoldstonefinancial.com; (4) goldstonefinancialgroupreviews.com; (5) anthonypellegrinoreview.com; (6) anthonypellegrinotruth.com; (7) briankorienek.net; and (8) goldstonefinancialgroupreview.com (collectively, "Domain Names"). (*See* ECF 21 at pp. 3-4 (setting forth basis for cybersquatting claim); ECF 29 (finding Plaintiffs showed a likelihood of success on the merits of cybersquatting claim).) Thus, liability is established under the ACPA, and Plaintiffs respectfully request that the Court enter an order directing the registrars to transfer the Domain Names to Plaintiffs. *See Deckers Outdoor Corp. v. Owner of ahnu.com*, 2024 WL 5159302, at *6 (E.D. La. Dec. 18, 2024) (ordering third-party registrars and registries to effectuate domain transfer where defendant had not appeared in the suit and was unlikely to transfer the domains as ordered); *Gucci America, Inc. v. Wang Huoqing*, 2011 WL 31191, at *15 (N.D. Cal. Jan. 3, 2011) (same).

Plaintiffs elect to seek statutory damages and respectfully submit that the maximum award of $800,000 ($100,000/domain name registered) is just and appropriate under the circumstances. In assessing the appropriate amount of statutory damages, courts consider "the egregiousness or willfulness of the defendant's cybersquatting, the defendant's use of false contact information to conceal its infringing activities, the defendant's status as a 'serial' cybersquatter . . . and other behavior by the defendant evidencing an attitude of contempt towards the court or the proceedings." *Oasis Legal Fin. Operating Co., LLC v. Chodes*, 2020 WL 11629278, at *2 (N.D. Ill. Sept. 9, 2020) (quoting *Verizon California Inc. v. Onlinenic, Inc*., 2009 WL 2706393, at *3 (N.D. Cal. Aug. 25, 2009)).

Here, there is no question that FinanceScam's conduct was egregious and willful. As alleged in the Complaint, FinanceScam's business is extortion: it inundates the internet with false, misleading, and defamatory content about its target, captures that target's attention, and then strong arms the target into enrolling in FinanceScam's purported "Citizen Advocacy Program" to mitigate and purge the very content it created. (ECF 1 ¶¶ 16-25.) Here, the Domain Names are an integral part of FinanceScam's extortion of Plaintiffs, as FinanceScam admittedly registered the Domain Names in retaliation for Pellegrino's alleged "censorship efforts" with the express intent of letting "everyknow [sic] know the TRUTH BEHIND ANTHONY PELLEGRINO" and the warning that this campaign "won't end well for Anthony. I promise him that:"

> **What are we doing now?**
>
> We are not going to bow down to these threats and intimidation tactics. Anthony Pellegrnio may have money, but we have the facts on our side.
>
> We have therefore decided to take the fight to him, cutting down his censorship efforts. We know that he has illegally taken down many adverse news articles as stated above, as well as dozens of critical videos. In addition, he has waged a campaign of Fake PR, spending a ton to create fake content and mislead his investors.
>
> So, let's undo that.
>
> We have set up 8 websites –
>
> 1. anthonypellegrino.net
> 2. anthonypellegrino.org
> 3. anthonypellegrinogoldstonefinancial.com
> 4. goldstonefinancialgroupreviews.com
> 5. anthonypellegrinoreview.com
> 6. anthonypellegrinotruth.com
> 7. briankorienek.net
> 8. goldstonefinancialgroupreview.com
>
> With our skills, we will ensure that in the coming months, several of these will rank on page #1 on Google. Letting everyknow know the TRUTH BEHIND ANTHONY PELLEGRINO. It's typical Streisand Effect !!
>
> You as – Why 8 websites? Well, why not. Our intention is to take their focus away from our platforms. Let them play the game on our pitch, on our terms, independant of FinanceScam.com and IntelligenceLine.com. IMHO, 8 is not enough.

(ECF 1 at ¶¶ 36-37.) The domains were created with the intent to "ensure that in the coming months, several of these will rank #1 of Google. . . ." (*Id.*). FinanceScam went on to say: "You as[k] – Why 8 websites? Well, why not. Our intention is to take their focus away from our platforms. Let them play the game on our pitch, on our terms, independant of FinanceScam.com and intelligenceLine.com. IMHO, 8 is not enough." (*Id.*) Making good on this promise, each website was used to distribute false and defamatory content about Plaintiffs, accusing Plaintiffs of forging Court orders, masterminding fraud, hacking FinaceScam's website, attempting to bribe FinanceScam, and, most egregiously, threatening to kill a seven-year-old child. (*See* ECF 1 at ¶¶ 28-39; ECF 1-2, collecting screenshots.) And despite having notice of this lawsuit, FinanceScam

did not defend against the allegations in the Complaint and further threatened to continue its campaign against Plaintiffs in the media after receiving notice of the Court's Preliminary Injunction Order, writing: "I hope karma bites your client where the sun don't shine. If the journalists who are in touch with us have any sort of integrity, they will cover this story, and we will make sure those articles are viewed by millions." (*See* Exhibit A.)

In view of the above, there can be no doubt that (1) FinanceScam registered the Domain Names with knowledge of Plaintiffs' rights and with the express intent of using the Domain Names to harm Plaintiffs and (2) FinanceScam has adopted an attitude of contempt towards the proceedings. A maximum award of $100,000 is warranted and consistent with awards granted in this circuit and others in similar circumstances. For example, a recent decision from this Court concluded that an award of the maximum $100,000/domain (for a total award of $1.2 million) was "amply warranted" where the defaulting defendant was alleged to have "registered at least twelve internet domain names similar to [plaintiff's] trademark" in order to "publish false and defamatory content about" plaintiff in furtherance of its "multi-faceted campaign of defamation and harassment." *Svanco, Inc. v. Brand*, 2022 WL 22894739, at *3 (N.D. Ill. Sept. 30, 2022) (f); *see also*, *Facebook, Inc. v. OnlineNIC Inc.*, 2024 WL 1974543, at *5 (N.D. Cal. May 3, 2024) (awarding $95,000/domain for domain names incorporating an exact spelling of Plaintiffs' Marks and another commonly spelled word); *Oasis*, 2020 WL 1162978, at *2-3 (awarding maximum of $100,000 statutory damages where there was no question infringing domain was registered in bad faith attempt to profit off plaintiffs' marks). Here, too, FinanceScam has engaged in a "multi-faceted campaign of defamation" using the Domain Names and intentionally caused significant harm to Plaintiffs' business and reputation. The maximum award of statutory damages is thus appropriate.

### C. Plaintiffs Are Entitled to a Permanent Injunction

This case is what injunctive relief was made for. FinanceScam, an overseas scammer, damaged Plaintiffs' reputation, goodwill, and cost it business. (*See* Declaration of Anthony Pellegrino in Support of Plaintiffs' Motion for Injunctive Relief (ECF 12-2) ¶¶ 9, 10.) *See, e.g.*, *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) ("[I]rreparable harm is typically found in a plaintiff's loss of control over their business reputation, loss of trade and loss of goodwill.").

To obtain permanent injunctive relief, a Plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Svanaco*, 2022 WL 22894739, at *2-3 (quoting *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006)). Here, a permanent injunction is appropriate because FinanceScam's statements impugning Plaintiffs' character with false accusations of fraud, deceit, and criminal activity, its registration of multiple domain names incorporating Plaintiffs' trademarks to further spread this false and defamatory conduct, and the other unlawful activity alleged in the Complaint, has "caused harm to [Plaintiffs'] reputation and goodwill that cannot adequately be measured or compensated by monetary damages." *Id.* at *3. In fact, because FinanceScam is an overseas defendant that has not cooperated in this litigation, it will be difficult if not impossible to collect on any monetary judgment awarded by the Court. Thus, injunctive relief is critical.

The balance of hardships overwhelmingly favors Plaintiffs, since there is no hardship to FinanceScam from having to permanently cease its unlawful conduct, and an injunction will serve the public interest by preventing potential customers of Plaintiffs from being confused and misled by false and defamatory information. *Id.* Accordingly, Plaintiffs are entitled to injunctive relief.

### III. CONCLUSION

For the reasons explained above, Plaintiffs request that the Court enter judgment in Plaintiffs' favor and against FinanceScam, award Plaintiffs $800,000 in statutory damages, and order the transfer of the Domain Names to Plaintiffs. Plaintiffs likewise request that the Court convert its preliminary injunction (ECF 29) into a permanent injunction, as set forth in the proposed order submitted herewith.

Dated: October 1, 2025

/s/ *James J. Saul*
James J. Saul
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street
Suite 3300
Chicago, IL 60606
312 356 5053
james.saul@faegredrinker.com

*Attorney for Plaintiffs Goldstone Financial Group and Anthony Pellegrino*

### CERTIFICATE OF SERVICE

I, James J. Saul, hereby certify that I caused a true and correct copy of the foregoing document to be served upon Defendant via email to editor@financescam.com on October 1, 2025.

Dated: October 1, 2025

/s/ *James J. Saul*